IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re | ) |
| Quince V. White, | ) Case No. 11-32765 |
| Debtor. | ) |
| | ) Hon. Jack B. Schmetterer |
| The Renaissance at Midway, Inc., | ) |
| Plaintiff, | ) Chapter 7 |
| v. | ) Adv. Pro. No. 12-00048 |
| Quince V. White, | ) |
| Defendant. | ) |

## ~~AMENDED PROPOSED~~ FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter comes before the Court on the Plaintiff's Motion for Default and Default Judgment pursuant to Federal Rule of Bankruptcy Procedure 7056, which incorporates by reference Federal Rule of Civil Procedure 56, filed by the creditor, The Renaissance at Midway, Inc. (the "Rennaisance").

For the reasons set forth herein, the Court enters its Amended Proposed Findings of Fact and Conclusions of Law.

### FINDINGS OF FACTS

1. The Renaissance is an Illinois corporation in good standing and licensed to do business in Illinois as the Renaissance at Midway, Inc.

2. Renaissance is a skilled nursing facility located in Chicago, Illinois providing services to nursing home residents.

3. The Defendant, Quince V. White, ("White") is an individual residing in

Chicago, Cook County, Illinois.

4.  White was the daughter of Lorene Gary, ("Mother").

5.  Mother was a former resident of Renaissance.

6.  On or about August 9, 2000, White as guardian of Mother, entered into a written agreement with the Renaissance.

7.  Under the agreement Renaissance agreed to admit Mother into its facility, and provide nursing care services to her in exchange for White's agreement to among other things, comply with all rules related to public aid.

8.  Except for short periods of time when she was hospitalized, from August 9, 2000 through June 10, 2004, Mother resided at the Renaissance.

9.  Following her admission to the Renaissance, on or about September 19, 2000, the Renaissance applied for and was approved to receive medical assistance (Medicaid) from the Illinois Department of Human Services/Illinois Department of Healthcare and Family Services (IDHFS) on behalf of Mother. By virtue of receiving Medicaid, the cost of Mother's stay at Renaissance was reduced but there was still a balance due each month.

10. Also shortly after her admission into the Renaissance, on October 27, 2000, White filed a Petition for Appointment of Guardian for Disabled Person, in the Circuit Court of Cook County, Probate Division.

11. White's Petition sought to have Mother adjudicated a disabled person and to have herself appointed as plenary guardian of the estate and person of Mother.

12. On December 22, 2000, the Circuit Court of Cook County, Probate Division, entered an Order adjudicating Mother a disabled person and appointed White, as Plenary Guardian of the Estate and Person of Mother.

13. On April 27, 2001, White filed a Petition to sell Mother's real estate, commonly known as 7128 S. Carpenter, Chicago, Illinois, in the Circuit Court of Cook

2

County.

14. White certified the representations in the Petition to Sell Real Estate as true and correct and under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure, specifically, the Petition to Sell Real Estate states: "That it is necessary to sell the real estate in or [sic] have the funds available **to pay for the costs of the nursing home** where the disabled person resides."

15. On April 27, 2001, the court entered an Order approving the sale of the real estate which was sold for $51,000.00.

16. According to White, after payment of closing costs, the sum of $43,587.56 was received by the estate of Mother and also according to White, **all of the funds** were "disbursed for payment of nursing home expenses, bond expenses and medical expenses not covered by insurance." (Report in Lieu of First and Final Count ¶ 10)

17. None of the proceeds of the sale of the real estate went to the outstanding debt owed to the Renaissance.

18. Further, besides not paying the obligations of her mother, Illinois law and IDHFS regulations provide that medicaid recipients and their representatives must notify IDHFS if a medicaid recipient's asset is sold or otherwise transferred and assets become available to pay for their care.

19. Ordinarily when such a disclosure is made IDHFS temporarily suspends its contribution to the recipient's nursing home and directs the guardian to "spend down" the new assets and pay the nursing home at the full rate.

20. White failed to notify IDHFS of the sale of Mother's real estate in violation of Illinois law and IDHFS regulations which require disclosure of any change in Mother's assets.

21. After the sale of the real estate, Mother continued to reside at Renaissance

3

and all charges were covered and paid by the IDHFS except for the amounts that IDHFS determined Mother and White were responsible to pay Renaissance.

22. On June 10, 2004, Mother was discharged from the Facility.

23. On March 3, 2005, Mother died.

24. On June 1, 2005, there remained a balance due and owing the Renaissance in the amount of $17,447.24.

25. Yet, on June 1, 2005, White filed a Report In Lieu of First and Final Account in the Circuit Court of Cook County, Probate Division.

26. The Report was certified by White, under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure, wherein White falsely asserts that the proceeds from the sale of the real estate were used to pay the Renaissance:

> After payment of all closing costs, the ward's estate received real estate proceeds in the amount of $43,587.56. **All funds were disbursed for payment of nursing home expenses, bond expenses and medical expenses not covered by insurance**; no other disbursements were made from the estate of Lorene Gary. The balance of the estate after the above-referenced disbursements, $3,811.53, was applied towards the funeral expenses of Lorene Gary. (emphasis added)

27. Although White knew of the outstanding balance owed to Renaissance, she misrepresented to the Circuit Court of Cook County that she satisfied this outstanding balance through the proceeds from the sale of the property.

28. White violated 735 ILCS 5/1-109 by certifying that the funds from the sale of Mother's real estate were used to pay nursing home expenses when they were not.

29. Section 1-109 of the code of the Code of Civil Procedure States:

> Any pleading, affidavit or other document certified in accordance with this Section may be used in the same manner and with the same force and effect as though subscribed and sworn to under oath. Any person who makes a false statement, material to the issue or point in question, which he does not believe to be true, in any pleading, affidavit or other document

4

certified by such person in accordance with this Section shall be guilty of a Class 3 felony. 735 ILCS 5/1-109.

30. On June 1, 2005, after White's misrepresentations, the probate court entered an order accepting and approving the Report in Lieu of First and Final Account, discharged White as plenary guardian, and closed the estate.

31. Thereafter, Renaissance demanded that White pay all amounts due to Renaissance for services rendered and supplies provided to and for the benefit of Mother.

32. White had access to and failed to use Mother's assets to pay the amounts due to Renaissance.

33. On August 9, 2010, Renaissance sued White in the Circuit Court of Cook County.

34. On August 10, 2011, White filed her petition under Chapter 7 of the Code. The Renaissance is scheduled as an undisputed debt in the amount of $17,447.24.

## CONCLUSIONS OF LAW

28. The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

## FRAUD
## 11 U.S.C § 523(a)(2)

29. The Renaissance reincorporates and re-alleges Paragraphs 1-28 as is fully set forth herein as Paragraph 29.

30. Section 523 of Title 11 of the United States Code provides, in pertinent part:

(a) A discharge under section 727... of this title does not discharge an individual debtor for any debt—[...]

(2) for money, property, services. . to the extent obtained by —actual fraud

31. Actual fraud within the meaning of 11 U.S.C. § 523(a)(2) includes, among

5

other things, deceit, artifice, trick, or design, involving direct and active operation of the mind used to circumvent and cheat another.

32. A creditor must establish: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute.

33. The existence of fraud may be inferred if the totality of circumstances presents a picture of deceptive conduct by the debtor that indicates an intent to deceive or cheat a creditor.

34. Further, the fraud may not be something overtly said, but something omitted with the design of perpetrating what is known to be a cheat or deception.

35. Here, as guardian, White obtained services from Renaissance for her mother and rather than pay for the services out of the proceeds of the sale of the real estate, White used the obligation to Renaissance as a basis for deceiving and tricking the Circuit Court of Cook County on at least two occasions.

36. On the first occasion, White represented that she needed to sell Mother's real estate so that she could pay the nursing home bill.

37. On the second occasion, White represented that the real estate was sold and that the proceeds had in part been used at least in part to pay Renaissance.

38. Both representations are false.

39. Further, a debtor's failure to disclose pertinent information may be a "false representation" supporting nondischargeability claim under discharge exception for false pretenses, false representation, or actual fraud.

40. Here, White was under an obligation to inform IDHFS of the liquidation of any property. Had she honored this obligation, she would not have realized a windfall of

$43,587.56. Rather, the Renaissance would have been paid in full.

41.  As a result of this fraud, the Renaissance was damaged in the amount of at least $17,447.24.

Prepared by
Christopher B. Lega

*[Signature]*
U.S. Bankruptcy Judge
APR 19 2012

12 A 00048<br>The Renaissance at Midway, Inc. v. White

## CERTIFICATE OF SERVICE

I, Dorothy Clay certify that on April 19, 2012, I caused to be served copies of the foregoing document to the following by electronic service through the Court's CM/ECF system or regular U.S. mail:

*/s/ Dorothy Clay*
Secretary/Deputy Clerk

### Electronic Service through CM/ECF System

Christopher B Lega
Johnson Legal Group, LLC
39 S. LaSalle Street
Suite 820
Chicago, IL 60603
Counsel for Plaintiff